IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM WESLEY DUTTON, *et. al.* )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>U.S. DEPARTMENT OF JUSTICE )<br>)<br>Defendant. )<br>) | Civil Action No.: 1:16-CV-01496 (ABJ) |

## SECOND DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1) I am the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), in Winchester, Virginia. I have held this position since August 1, 2002. Prior to my joining the Federal Bureau of Investigation ("FBI"), from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2) In my official capacity as Section Chief of RIDS, I supervise approximately 247 employees who staff a total of ten (10) Federal Bureau of Investigation Headquarters ("FBIHQ")

1

plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007 and the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to Plaintiffs' request for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the FBI's handling of Plaintiffs' Freedom of Information/Privacy Act ("FOIPA") request for "any and all records concerning, regarding, or relating to William Wesley Dutton."

(4)     This declaration supplements and incorporates by reference the information previously provided in my first two declarations in this case. *See* ECF No. 14-2 ("First Hardy Declaration") and ECF No. 15-1 ("Hardy *in camera* Declaration"). This declaration is submitted in response to the Plaintiffs' Cross-Motion for Summary Judgment (hereinafter "CMSJ") filed June 23, 2017. *See* ECF 20 Cross Motion for Summary Judgment. This declaration addresses Plaintiffs' allegations that (1) an adequate search for electronic surveillance ("ELSUR") records was not undertaken; and (2) the FBI's determination of the segregability of responsive records

2

pursuant to the FOIA, specifically in regards to documents withheld pursuant to Exemptions 6, 7(C), and b(7)(E)-5. The FBI will address Plaintiffs' other averments regarding the adequacy of the FBI's search and additional b(7)(E) segregability issues in a separate *In Camera, Ex Parte* Declaration.

### Response to Allegations Regarding the FBI's ELSUR Search

(5)     RIDS' process for searching ELSUR records in response to FOIA/Privacy Act requests changed in February 15, 2015. Prior to that date, RIDS would contact FBI personnel, who managed the FBI's ELSUR indices, and request a search for ELSUR records in response to FOIA/Privacy Act requests. FBI personnel would conduct the search and provide RIDS the result. At that time, RIDS was unaware of their specific search methods. On or about February 15, 2015, RIDS discovered FBI personnel would search for ELSUR records by simply conducting a search of the CRS via the UNI application of ACS. This is the same search mechanism RIDS employs in searching for non-ELSUR records. After this discovery, RIDS streamlined the process and began searching for ELSUR and non-ELSUR records by conducting one search of ACS via the UNI Application and Sentinel to avoid duplicative efforts and unnecessary delays. Therefore, RIDS no longer conducts a separate "ELSUR search" by contacting FBI personnel as described above; instead, RIDS relies on its CRS search to locate ELSUR records.

(6)     In Plaintiffs' CMSJ, he alleges that "an adequate search for electronic surveillance records was not undertaken." He claims "[b]ecause ELSUR has a 'distinct legal identity' from CRS, a complete and accurate search for surveillance records is normally done of ELSUR itself,

3

rather [than] ACS and Sentinel." *See* CMSJ on page 11. Plaintiffs' statements are wholly inaccurate. As stated in my First Hardy Declaration, RIDS requested an independent ELSUR search on November 14, 2014 utilizing the old method because it was initiated before RIDS' discovery that an ACS and Sentinel search encompassed ELSUR records. On or about November 14, 2014, FBI personnel conducted a search for ELSUR records via ACS and provided RIDS with a "no records" response. *See* First Hardy Declaration at ¶ 7. RIDS conducted a separate search of the CRS for non-ELSUR records and resulted in no records. Thus, the FBI conducted two separate searches that would have reasonably identified ELSUR records should they exist. In both instances, the FBI was unable to identify responsive ELSUR records; therefore, showing consistent search results. The change in ELSUR search procedures had no practical effect. In my First Hardy Declaration, I stated that "while ELSUR has a distinct legal identity from the CRS as a different Privacy Act System of Records, in terms of function, information from both ELSUR and the CRS are indexed and retrieved via index searches of the FBI's two case management systems: ACS and Sentinel." *See* First Hardy Declaration ¶30. Additionally, I explained "although ELSUR has a different identity from the CRS as a Privacy Act System of Records, the functional task of indexing and retrieving information from both ELSUR and the CRS is accomplished via indexing pertinent information for retrieval in the FBI's ACS and Sentinel case management systems. *Id.* at 34. Thus, the FBI's search of ACS and Sentinel accomplished the task of searching ELSUR indices for responsive records and in this case, no records resulted. *Id.*

## Response to Allegations Regarding Segregability

(7)     In the CMSJ filed June 23, 2017, the Plaintiffs first allege the FBI "failed to properly segregate all non-exempt information in response to Plaintiffs' request for records." *See* ECF 20. The FBI processed 1,100 pages of records responsive to Plaintiffs' request. Of these, 6 pages were released in full ("RIF"), 79 pages were released in part ("RIP"), and 1,015 pages were withheld in full ("WIF"), *See* First Hardy Declaration ¶ 4. Plaintiffs state that "the FBI did not undertake a reasonable effort to segregate all information that may be disclosed."

(8)     The FBI has thoroughly reviewed all responsive documents subject to this FOIA request, and every effort was made to provide Plaintiffs with all reasonably segregable, non-exempt information within those documents. The FBI withheld non-segregable information using exemptions b(1), b(3), b(6), b(7)(A), b(7)(C), b(7)(D), b(7)(E) and j(2).

(9)     Plaintiffs specifically question improper withholdings of certain documents in full based solely on the use of exemptions b(6), b(7)(C), and b(7)(E)-5 which are intended to "protect only the names and/or identifying information of third parties to protect their privacy" and to "protect FBI database identifiers and printouts." The FBI has reviewed this material[1] again. Documents stamped Dutton 41-44 consist of a letter written by a third party individual to a United States Senator. This information was removed in its entirety because it is very singular in nature, solely related to a third party, and if released in part, could still be used to identify the third party individual. Document stamped Dutton 45 was a response to the previous letter (Dutton 41-44),

---

[1] Reviewed documents Bates stamped Dutton 8-9, 14, 19-20, 41-44, 45 and 83-85.

5

and must be withheld due to the same privacy considerations. Plaintiffs also question documents stamped Dutton 83-85 which, after further review, were also correctly withheld under exemptions b(6) and b(7)(C). These documents consist completely of pictures and personally identifiable information regarding third party individuals and no additional information can be released, without risking invasion of these individuals' personal privacy.

(10)   Plaintiffs also question the processing of documents which are Bates stamped Dutton 8-9, 14, and 19-20. These documents were withheld in full using exemption b(7)(E)-5, which is intended to "protect FBI database identifiers and printouts." Plaintiffs state that the FBI "does not provide any evidence that the printout or database identifier cannot be redacted so that information that does not fall under one of the exemptions could be segregated and produced to Plaintiffs." The FBI reviewed these documents again and determined they were properly withheld under the exemption of b(7)(E)-5 because they are, in fact, printouts from protected FBI databases. Revealing the database identity, or specific information relating to the database, could reasonably be expected to cause harm to the investigation by revealing the type of data that is useful to the FBI's law enforcement mission, and could potentially risk circumvention from the law.

## CONCLUSION

(11)   The FBI performed adequate and reasonable searches, to include an ELSUR search, for responsive records, and processed and released all reasonably segregable non-exempt information from the responsive records. The FBI properly denied access to records pursuant to

Privacy Act Exemption (j)(2) and FOIA Exemptions 1, 3, 5, 6, 7(A), 7(C), 7(D), and 7(E), 5 U.S.C. §§ 552 (b)(1), (b)(3), (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(E). The FBI carefully examined the documents and determined the information withheld from Plaintiffs in this case, if disclosed:   would reveal classified and statutorily protected information; would reveal privileged information; could reasonably be expected to interfere with pending or prospective enforcement proceedings; would cause a clearly unwarranted invasion of the personal privacy, or could reasonably be expected to constitute an unwarranted invasion of personal privacy; could reasonably be expected to disclose the identities of confidential sources and the information they provided; and/or would disclose techniques and procedures for law enforcement investigations.   After extensive review of the responsive records, I determined there is no further non-exempt information that can be reasonably segregated and released without revealing exempt information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 1st day of August.

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia