_____

)
WILLIAM WESLEY DUTTON, *et al.,*　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiffs,　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　　)　　　Civil Action No. 16-1496 (ABJ)
　　　　　　　　　　　　　　　　　　)
U.S. DEPARTMENT OF JUSTICE,　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendant.　　　　　)
_____)

## MEMORANDUM OPINION

Plaintiffs William Wesley Dutton and Judicial Watch, Inc. have brought this action against the U.S. Department of Justice ("DOJ") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. Plaintiffs sought records from the Federal Bureau of Investigation ("FBI") and Office of Inspector General ("OIG") "concerning, regarding, or relating to William Wesley Dutton." Ex. A to Decl. of David M. Hardy [Dkt. # 14-2] ("FBI Request"); Ex. 1 to Decl. of Deborah M. Waller [Dkt. # 14-1] ("OIG Request"). Defendant has moved to dismiss or, in the alternative, for summary judgment, and plaintiffs have moved for summary judgment. For the reasons that follow, the Court will grant defendant's motion and will deny plaintiffs' motion.

## BACKGROUND

Plaintiffs allege that Dutton was an informant who provided the FBI and other law enforcement agencies with information about illegal narcotics trafficking, fugitives, public corruption, and terrorism in Texas and New Mexico. Christopher J. Farrell Declaration [Dkt. # 20-1] ("Farrell Decl.") ¶ 4. Dutton alleges that he was the subject of an unlawful search and seizure by FBI and DOJ OIG special agents in February 2014, which was the basis of a *Bivens* lawsuit he

filed in the U.S. District Court for the District of New Mexico.[1]  *Id.*  ¶¶ 2–4; Ex. 1 to Farrell Decl. In an effort to further investigate the alleged misconduct, Dutton, along with Judicial Watch, a not-for-profit organization, submitted FOIA and Privacy Act requests to the FBI and DOJ's OIG in October 2014.  Compl. [Dkt. # 1] ¶¶ 6–7.

Plaintiffs filed this FOIA and Privacy Act lawsuit on July 21, 2016.  Compl. [Dkt. # 1]. At that time, the OIG had produced eight pages of responsive records, and the FBI had produced none.  *Id.* ¶¶ 9, 10, 11.  Once defendant completed processing the FOIA request, it filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (6), and in the alternative, a motion for summary judgment under Rule 56.  Def.'s Mot. to Dismiss or in the Alternative for Summ. J. [Dkt. # 14]; Mem. of P. & A. in Supp. of Def.'s Mot. [Dkt. # 14] (collectively, "Def.'s Mot."). Plaintiffs filed a cross-motion for summary judgment, contending that defendant's searches were inadequate and that it failed to properly segregate all non-exempt information.  Pls.' Cross-Mot. for Summ. J. [Dkt. # 20]; Mem. in Opp. to Def.'s Mot. & in Supp. of Pls.' Mot. [Dkt. # 20] (collectively, "Pls.' Cross-Mot.").   Defendant filed a reply in support of its motion and in opposition to plaintiffs' cross-motion for summary judgment on August 16, 2017.  Def.'s Reply in Supp. of Def's. Mot. & in Opp. to Pls.' Cross-Mot. [Dkt. # 24] ("Def.'s Cross-Opp.").  Then, on September 14, 2017, plaintiffs filed their reply in support of their cross-motion for summary judgment.  Pls.' Reply in Supp. of Cross-Mot. [Dkt. # 28] ("Pls.' Cross-Reply").

## I.    The OIG Request

On October 30, 2014, defendants submitted a FOIA and Privacy Act request to the U.S. Department of Justice's OIG office in Washington, D.C., seeking:

---

1    Plaintiff Dutton later dismissed the lawsuit.  Pls.' Cross-Mot. for Summ. J. [Dkt. # 20] at 3 n. 1.

> Any and all records concerning, regarding, or relating to William Wesley Dutton. Such records include, but are not limited to, records of background checks of William Wesley Dutton, records of communication, contacts, or correspondence between William Wesley Dutton and employees, officials, or agents of the Department of Justice Office of the Inspector General, and records of investigations concerning or regarding William Wesley Dutton.

OIG Request. The same request was also sent to the "El Paso Area FOIA/PA Officer." *Id.* Because all FOIA requests are handled centrally by the OIG office in Washington, D.C., Deborah M. Waller, a Government Information Specialist based in D.C., coordinated the request on behalf of the OIG. Deborah M. Waller Decl. [Dkt. # 14-1] ("First Waller Decl.") ¶¶ 1, 5. The OIG acknowledged receipt of the request by letter dated November 4, 2014. Ex. 2 to First Waller Decl.

The agency informed plaintiffs that it completed processing their request on July 8, 2015. First Waller Decl. ¶ 11. The OIG produced eight pages of responsive documents which contained partial redactions and withheld six pages in their entirety under FOIA Exemption 6 and 7(C). *Id.* The letter also informed plaintiffs that they could appeal the agency's response and alerted them to the fact that the "OIG located documents that originated with the Federal Bureau of Investigation" and that it was "referring those documents to the FBI for a direct response." Ex. 3 to First Waller Decl. Upon determining that some non-exempt information could be segregated, the OIG later released a partially redacted four-page document that was previously withheld in full. First Waller Decl. ¶ 13; Email Correspondence between Def.'s Counsel and Pls.' Counsel [Dkt. # 14-3]. In the end, the OIG produced 12 pages of responsive documents with partial redactions and withheld two pages in full.

## II. The FBI Request

Plaintiffs submitted a FOIA and Privacy Act request to the FBI by letter dated October 30, 2014, seeking:

> Any and all records concerning, regarding, or relating to William Wesley

Dutton. Such records include, but are not limited to, records of background checks of William Wesley Dutton, records of communication, contacts, or correspondence between William Wesley Dutton and employees, officials, or agents of the Federal Bureau of Investigation, and records of investigations concerning or regarding William Wesley Dutton.

FBI Request. The FBI claims that it acknowledged receipt of the request and informed plaintiffs in a letter dated November 18, 2014, that it was "unable to identify main file records responsive to the [request]." David. M. Hardy Decl. [Dkt. # 14-2] ("First Hardy Decl.") ¶ 7; Ex. B. to First Hardy Decl. The letter also advised plaintiffs of their right to file an administrative appeal with the DOJ's Office of Information Policy ("OIP"). *Id.* Plaintiffs claim that this letter was not postmarked until January 2, 2015. Compl. ¶¶ 8, 10. But plaintiffs received it and filed an administrative appeal with OIP on January 13, 2015. First Hardy Decl. ¶ 9; Ex. D to First Hardy Decl.

The FBI later "reopened" the request after it was notified by the OIG that it had identified responsive records located within the FBI. First Hardy Decl. ¶ 12, Ex. G of First Hardy Decl. By letter dated March 10, 2016, the FBI informed plaintiffs that the agency "determined that potentially responsive documents exist," and consequently it was in "the process of searching, gathering, and processing any newly discovered material . . . ." First Hardy Decl. ¶ 13; Ex. H to First Hardy Decl.

Ultimately, the FBI identified 1,100 pages of responsive records. First Hardy Decl. ¶ 4. Of these, 6 pages were released in full, 79 were released in part, and the bulk of the records – 1,015 pages – were withheld in full. *Id.*; Ex. N to First Hardy Decl. The information was withheld under the Privacy Act Exemption (j)(2) and under FOIA Exemptions 1, 3, 5, 6, 7(A), 7(C), 7(D), and 7(E), as the FBI resisted disclosing information that could cause serious damage to national

security or would interfere with pending law enforcement investigations, including the operations of the FBI's informant program.  *Id.*

## STANDARD OF REVIEW

In a FOIA case, the district court reviews the agency's decisions *de novo* and "the burden is on the agency to sustain its action."  5 U.S.C. § 552(a)(4)(B); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  "[T]he vast majority of FOIA cases can be resolved on summary judgment."  *Brayton v. Office of U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).[2]

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is "genuine" only if a

---

2       The Court finds that Federal Rule of Civil Procedure 12(b) is inapplicable here because the defendant has already filed an answer to the complaint.  Answer to Compl. [Dkt. # 7].  Therefore, the Court will treat the motion as a motion for summary judgment. *See Yates v. Dist. of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003) (finding that when defendant files an answer to a complaint, Rule 12(b) is "inapplicable" and the motion should be filed under Rule 12(c); but if the court considers matters outside of the of the pleadings, the motion should be ruled on as a motion for summary judgment under Rule 56).

reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).

In the FOIA context, "the sufficiency of the agency's identification or retrieval procedure" must be "genuinely in issue" in order for summary judgment to be inappropriate. *Weisberg v. Dep't of Justice*, 627 F.2d 365, 371 n.54 (D.C. Cir. 1980), quoting *Founding Church of Scientology of Washington, D.C., Inc., v. Nat'l Sec. Agency*, 610 F.2d 824, 836 (D.C. Cir. 1979) (internal quotation marks omitted). In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

"Summary judgment may be granted on the basis of agency affidavits" in FOIA cases, when those affidavits "contain reasonable specificity of detail rather than merely conclusory statements," and when "they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013), quoting *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006). However, a plaintiff cannot rebut the good faith presumption afforded to an agency's supporting affidavits through "purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), quoting *Ground Saucer Watch, Inc. v. Cent. Intelligence Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981).

## ANALYSIS

FOIA requires the release of government records upon request. Its purpose is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). At the same time, Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 621 (1982); *see also Ctr. for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003) ("FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential."), citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). The Supreme Court has instructed that "FOIA exemptions are to be narrowly construed." *Abramson*, 456 U.S. at 630.

To prevail in a FOIA action, an agency must first demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Second, the agency must show that "materials that are withheld . . . fall within a FOIA statutory exemption." *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005). Any "reasonable segregable" information in a responsive record must be released, 5 U.S.C. § 552(b), and "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

## I.    Legal Standard for an Adequate Search

Because a fundamental principle behind FOIA "is public access to government documents," courts require "agencies to make more than perfunctory searches and, indeed, to follow through on obvious leads to discover requested documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999), citing *John Doe Agency*, 493 U.S. at 151 and *Campbell v. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998). Therefore, an agency only "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Id.*, quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see also Oglesby*, 920 F.2d at 68. Although there "is no requirement that an agency search every record system," an agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby*, 920 F.2d at 68.

To demonstrate that it has performed an adequate search for responsive documents, an agency must submit a reasonably detailed affidavit describing the search. *Oglesby*, 920 F.2d at 68 (finding summary judgment improper where agency's affidavit lacked sufficient detail); *see also Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009) (same). An affidavit is "reasonably detailed" if it "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby*, 920 F.2d at 68; *see also Defs. of Wildlife*, 623 F. Supp. 2d at 92 (finding declaration deficient where it failed to detail the types of files searched, the filing methods, and the search terms used). However, agency affidavits that "do not denote which files were searched, or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [the requester] to challenge the procedures utilized" are insufficient to support summary judgment. *Weisberg*, 627 F.2d at 371. Moreover, conclusory

assertions about the agency's thoroughness are insufficient. *Morley*, 508 F.3d at 1121; *Nat'l Sec. Counselors v. Cent. Intelligence Agency*, 849 F. Supp. 2d 6, 11 (D.D.C. 2012) ("The affidavit must explain the scope and method of the agency's search in a non-conclusory fashion.") (internal quotation marks omitted).

"Agency affidavits are accorded a presumption of good faith," *SafeCard Servs., Inc.*, 926 F.2d at 1200, which can be rebutted with "evidence of agency bad faith," *Military Audit Project*, 656 F.2d at 738, or when "a review of the record raises substantial doubt" that certain materials were overlooked despite well-defined requests. *Valencia-Lucena*, 180 F.3d at 326, citing *Founding Church of Scientology of Washington, D.C., Inc.*, 610 F.2d at 837; *see also Truitt*, 897 F.2d at 542 ("If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper.").

As will be set out in more detail below, the declarations provided by defendant demonstrate that the agencies conducted searches reasonably calculated to uncover all relevant documents.

## II. The Searches

### A. The FBI Search was adequate.

To support its contention that it conducted an adequate search and properly applied certain exemptions under FOIA and the Privacy Act, the FBI offered four declarations from David M. Hardy, Section Chief of the Record/Information Dissemination Section of the agency's Records Management Division. Two of the declarations are public, *see* First Hardy Decl., Second Declaration of David M. Hardy [Dkt. # 24-1] ("Second Hardy Decl."), and the other two were filed *ex parte, in camera* with the Court's permission on the grounds that the information they contained was classified and/or its public release would have been harmful. *See* Unopposed Mot. for Leave to Submit Decl. *Ex Parte*, *In Camera* [Dkt. # 15]; Min. Order (May 9, 2017); Mot. for Leave to

Submit Second Decl. *In Camera*, *Ex Parte* [Dkt. # 26]; Min. Order (Aug. 31, 2017). The Court has reviewed all four declarations.

The 59-page declaration from Hardy, filed with the opening motion, provides a detailed description of how the FBI maintains its records, which databases the agency searched, and the steps taken to respond to plaintiffs' request. First Hardy Decl. ¶¶ 21–35. The FBI searched the Central Records System ("CRS"), which consists of records of "applicant, investigative, intelligence, personnel, administrative, and general files" that spans the entire FBI including its headquarters, field offices, and legal offices worldwide. *Id.* ¶ 21. Because CRS "is where the FBI indexes information about individuals, organizations, events, and other subjects of investigative interest," the agency asserts that is where records responsive to plaintiffs' request would reasonably be found. *Id.* ¶ 35.

The FBI used two case management systems, Automated Case Support ("ACS") and Sentinel, to search the vast number of records within CRS. First Hardy Decl. ¶¶ 25–27. These case management systems enable those searching to gain access to multiple indices. *Id.* ¶¶ 26, 27. The FBI used the Universal Index ("UNI"), an automated index of the CRS which "provides all offices of the FBI a centralized, electronic means of indexing pertinent investigative information to FBI files for future retrievals via index searching." Def.'s Statement of Material Facts [Dkt. # 14] ("Def.'s SOF") ¶ 20; First Hardy Decl. ¶ 26. The use of ACS and Sentinel also provided access to the Electronic Surveillance ("ELSUR") indices, which "comprise records related to electronic surveillance sought, administered, and/or conducted by the FBI since January 1, 1960." First Hardy Decl. ¶¶ 28, 30.

The FBI's declarant avers that the agency conducted multiple searches using variations of the name "William Wesley Dutton" on the FBI's two case management systems – ACS and

Sentinel. First Hardy Decl. ¶ 32. When the searches did not initially identify records, the FBI conducted additional searches prompted by the OIG's referral of responsive documents. *Id.* ¶ 33. According to the FBI, "upon review of the documents referred by OIG" the "FBI was able to locate records indexed under identifying information related to Mr. Dutton," and it directs the Court's attention to the first *ex parte, in camera* declaration it filed which "provides additional details concerning this additional searching." *Id.* ¶ 33 n. 12.[3]

Plaintiffs insist that the FBI's search using Dutton's name was inadequate because records related to informants are stored under a code name and/or symbol number and not a person's birth name. Pls.' Cross-Mot. at 10–11. Plaintiffs also argue that defendant failed to search other electronic databases that contain records related to informants, and they challenge the agency's assertion that it searched ELSUR by using ACS and Sentinel instead of undertaking a separate

---

3    Plaintiffs object to the Court's determination of the adequacy of the search based upon declarations that they cannot review. Pls.' Cross-Mot. at 10; Pls.' Cross-Reply at 1–2. They contend that that they did not originally oppose the first *ex parte, in camera* declaration because the government's motion claimed that it related to the question of FOIA exemptions, rather than the adequacy of the search. Plaintiffs demand to know whether the *ex parte, in camera* declarations stated whether a search was undertaken of some confidential source filing system. Pls.' Cross-Mot. at 10. They argue that they need this information to challenge defendant's contention that it conducted a reasonable and complete search under FOIA. *Id.* at 10 n. 2; Pls.' Cross-Reply at 1–2. But courts have inherent authority to review documents *in camera. Arieff v. U.S. Dep't of Navy*, 712 F.2d 1462, 1469 (D.C. Cir. 1983) ("[T]he receipt of *in camera* affidavits is . . . 'part of a trial judge's procedural arsenal.'"), quoting *United States v. Southard*, 700 F.2d 1, 11 (1st Cir. 1983). As the D.C. Circuit has recognized, "where the district court could reasonably find that public itemization and detailed justification would compromise legitimate secrecy interests . . . it [is] appropriate to receive affidavits *in camera* rather than in public." *Hayden v. NSA*, 608 F.2d 1381, 1385 (D.C. Cir. 1979). The Court of Appeals "recognized that a fuller public record could enhance the adversary process; but it could also reveal sensitive information." *Id.* at 1385; *see also Mobley v. CIA*, 806 F.3d 568, 588 (D.C. Cir. 2015) (affirming the use of *ex parte, in camera* declarations where agency asserted a national security interest in the records). Because it is well-established that the receipt and review of *in camera* and *ex parte* declarations is permissible in the FOIA context, and the Court has received all of the declarations applying the appropriate legal standards, plaintiffs' objections are not well-founded.

search of ELSUR. *Id.* In support of their position that the FBI's search was inadequate, plaintiffs point out that the FBI failed to produce a certain document that indisputably exists – a consent form signed by Dutton authorizing the surveillance of certain telephone calls. *Id.* at 12. Plaintiffs submitted the declarations of a former U.S. Army Military Intelligence Officer and a former FBI agent to support their claims. *See* Farrell Decl. ¶ 8; Michael J. Sharkey Decl. [Dkt. # 19-2] ¶¶ 3–6.

Based on the Court's review of the full record, including the *in camera, ex parte* declarations, the Court finds that the search was "reasonably calculated to uncover all relevant documents." *Valencia-Lucena*, 180 F.3d at 325, quoting *Truitt*, 897 F.2d at 542. The agency's "failure to turn up a particular document . . . does not undermine the determination that the agency conducted an adequate search for the requested records." *Wilbur v. CIA,* 355 F.3d 675, 678 (D.C. Cir. 2004); *see also Iturralde v. Comptroller of the Currency,* 315 F.3d 311, 315 (D.C. Cir. 2003) (holding that "the failure of an agency to turn up one specific document in its search does not alone render a search inadequate"). The agency submitted a reasonably detailed set of affidavits that "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials . . . were searched." *Oglesby*, 920 F.2d at 68. The information proffered by plaintiffs about how the searches should have been undertaken may be based on those declarants' previous experience at the agency, but in the end, they simply offer unsubstantiated opinion or speculation about what could or should have been done and therefore fail to rebut the good faith presumption afforded to the agency's affidavits. *SafeCard Servs., Inc.*, 926 F.2d at 1200. Moreover, in its reply, the FBI clarified that the process for searching ELSUR was streamlined after February 15, 2015, so "one search of ACS via the UNI Application and Sentinel" simultaneously searches ELSUR. Second Hardy Decl. ¶ 5.

A.    **The OIG Search was adequate.**

The two declarations of Deborah M. Waller, a Government Information Specialist, address the OIG's search and review of responsive records. First Waller Decl.; Second Decl. of Deborah M. Waller [Dkt. # 24-2] ("Second Waller Decl."). According to Waller, the OIG maintains investigative records relating to complaints of DOJ employee misconduct received by the OIG. First Waller Decl. ¶ 3. These records can be searched by the name of the individual subject or subjects of the investigations and/or by the name of the complainant. *Id.* She avers that she conducted a search for responsive records in the OIG's Investigation Data Management System (IDMS), the electronic database that maintains all of OIG's investigative records, using a key word search of variations of Dutton's name. *Id.* ¶ 7. Waller also contacted the OIG's Investigations Division El Paso Area Office seeking any records communications, contacts, or correspondence between William Wesley Dutton and the OIG. *Id.* ¶ 8. Additionally, she requested that the OIG's Cyber Investigations Office search records that contained Dutton's name that were maintained by OIG personnel associated with the OIG's Investigations Division Area Office in El Paso, Texas and the OIG's Investigations Division Field Office in Dallas, Texas, which oversees the work of the El Paso Area. *Id.* ¶ 9.

Because the Waller declarations set forth a comprehensive description of how the agency maintains records, which search terms were used, and how the search was conducted, the Court finds that the search was adequate. *See Valencia–Lucena*, 180 F.3d at 326. While plaintiffs' contentions focus primarily on the FBI, they briefly argue that the OIG's search was also unreasonable "to the extent the DOJ OIG utilizes a similar separate filing system for records that pertain to confidential sources and such sources are provided pseudonyms or code names." Pls.' Cross-Mot. at 12. In its reply, the OIG explains that the agency does not maintain its databases

using code names.  Second Waller Decl. ¶¶ 3–4.  Thus plaintiffs' "purely speculative claim" is irrelevant and fails to rebut the good faith presumption afforded to the agency's detailed affidavits. *SafeCard Servs., Inc.*, 926 F.2d at 1200.

## III.    The FBI and OIG withholdings are justified, and the agencies disclosed all reasonably segregable material.

The general rule in FOIA cases is that "[i]f an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011).  "[W]hen an agency seeks to withhold information, it must provide a relatively detailed justification" for the withholding, *Morley*, 508 F.3d at 1122, quoting *King v. U.S. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987), through a *Vaughn* index, an affidavit, or by other means.  *Gallant v. Nat'l Labor Relations Bd.*, 26 F.3d 168, 172–73 (D.C. Cir. 1994).  Furthermore, where a case turns on classified material, "[t]he court is to 'accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record.'"  *Jarvik v. CIA*, 741 F. Supp. 2d 106, 118 (D.D.C. 2010), quoting *Military Audit Project*, 656 F.2d at 738.

After asserting and explaining the use of particular exemptions, an agency must release "[a]ny reasonably segregable portion of a record," 5 U.S.C. § 552(b), unless the non-exempt portions are "inextricably intertwined with exempt portions" of the record.  *Mead Data Cent., Inc.*, 566 F.2d at 260; *see also Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002).  "In order to demonstrate that all reasonably segregable material has been released, the agency must provide a 'detailed justification' for its non-segregability," although "the agency is not required to provide so much detail that the exempt material would be effectively be disclosed."

*Johnson*, 310 F.3d at 776, citing *Mead Data Cent., Inc.*, 566 F.2d at 261. Just as with the exemption analysis, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007), citing *Boyd v. Criminal Div. of Dep't of Justice*, 475 F.3d 381, 391 (D.C. Cir. 2007), and "[a] court may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated." *Juarez v. Dep't of Justice*, 518 F.3d 54, 61 (D.C. Cir. 2008), citing *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996). A district court must make an express finding on segregability. *Id.* at 60, citing *Morley*, 508 F.3d at 1123.

As previously noted, the FBI processed 1,100 pages of responsive records to plaintiffs' request. First Hardy Decl. ¶ 4. Ultimately, the agency released 6 pages in full, 79 pages were released in part, and the bulk of the responsive pages – 1,015 – were withheld in full. *Id.* The FBI justified withholding this information under Privacy Act Exemption (j)(2) and eight FOIA Exemptions: 1, 3, 5, 6, 7(A), 7(C), 7(D), and 7(E). *Id.* at 5. The FBI provided plaintiffs with a *Vaughn* index that explains the basis for withholding each of the 1,1015 pages it identified as responsive but exempt under FOIA and the Privacy Act. First Hardy Decl. ¶¶ 42–113; Ex. O to First Hardy Decl.

The Court finds that the FBI's declarations, including the four declarations from David M. Hardy as well as the two declarations from Michael T. Heaton, an employee of the United States Army Intelligence and Security Command ("INSCOM"), *see* Michael T. Heaton Decl., Ex. P, Ex. Q to First Hardy Decl. [Dkt. # 14-2], and the *Vaughn* index provide detailed justifications for the withholdings, demonstrate that the information withheld logically falls within the claimed exemptions, and is not contradicted by other evidence or shows evidence of bad faith. *ACLU*, 628

F.3d at 619. Together, the records, also support the conclusion that defendant met its segregability requirement.

The OIG identified a much smaller set of responsive documents that originated from its agency – only 14. Of these, the agency produced 12 pages of responsive documents with partial redactions and withheld two pages in full. The OIG declarant provides detailed explanations for the withholdings under Exemption 6, 7(C), and 7(E), and also avers that all segregable information has been produced. First Waller Decl. ¶¶ 16–22.

Plaintiffs claim that the "evidence is overwhelming" that the FBI and OIG "failed to properly segregate all non-exempt information in response to Plaintiffs' request for records," Pls.' Cross-Mot. at 12, 16. This again is based on the failure to produce a specific document, which is not sufficient to establish that the document was unlawfully withheld. *Iturralde*, 315 F.3d at 315. Otherwise, plaintiffs challenge only the invocation of Exemptions 6, 7(C), and 7(E). But plaintiffs' arguments do not defeat defendant's motion for summary judgment.

1.     **FOIA Exemption 6 and 7(C)**

FOIA Exemption 6 bars disclosure of "personnel and medical files and similar files when the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). FOIA Exemption 7(C) protects from disclosure:

> [R]ecords or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy.[4]

---

4     The FBI's declarant avers that it is the practice of the agency to assert Exemption 6 in conjunction with Exemption 7(C). First Hardy Decl. ¶ 65 n. 22.

Because Exemption 7(C) involves a lower threshold than the one set forth in Exemption 6, which requires a "clearly unwarranted invasion" of privacy, *see* 5 U.S.C. § 552(b)(6), the Court will address Exemption 7(C) first. *See Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755–56, 763–65 (1989) (comparing Exemption 7(C) and Exemption 6); *see also Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1125 (D.C. Cir. 2004) (deeming "the privacy inquiry of Exemptions 6 and 7(C) to be essentially the same"). And because the Court concludes that the withheld information is properly exempted pursuant to Exemption 7(C), it need not address whether Exemption 6 would independently justify the FBI withholding the information. *See Simon v. Dep't of Justice*, 980 F.2d 782, 785 (D.C. Cir. 1992) (finding that because the information fell within another exemption, the court did not need to address whether Exemption 7(C) would independently justify the withholding of the requested document); *see also Smith v. Sessions*, 247 F. Supp. 3d 19, 26 (D.D.C. 2017) (concluding that the court need not consider Exemption 6 if it has already concluded that Exemption 7(C) applies to the same information).

In order for particular records to qualify for Exemption 7(C), the agency must first demonstrate that the documents were compiled for law enforcement purposes. *See Rural Hous. Alliance v. U.S. Dep't of Agric.*, 498 F.2d 73, 80 (D.C. Cir. 1974). A determination of proper withholding under Exemption 7 also requires "balanc[ing] the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect." *ACLU v. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011), quoting *Reporters Comm. for Freedom of Press*, 489 U.S. at 776.

The First Hardy Declaration on behalf of the FBI states that all of the information at issue was compiled "in the course of the FBI's investigations of subjects associated with Mr. Dutton for possible violation of federal crimes." First Hardy Decl. ¶ 64. Thus, "these records were compiled

for law enforcement purposes and . . . squarely fall within the law enforcement duties of the FBI." *Id.* The material includes identifying information about FBI Special Agents, local law enforcement personnel, third party victims, non-FBI government personnel, third-parties of investigative interest, third-parties who provided information, and third-parties with criminal records. *Id.* ¶¶ 63–87. Moreover, Hardy avers that "in each instance where information was withheld pursuant to Exemption 6 and 7(C), the FBI determined that individuals' privacy interests outweighed the public interest, if any, in the information." *Id.* ¶ 66.

Plaintiffs do not challenge whether defendant satisfied the law enforcement purpose threshold requirement, or whether defendant properly balanced the privacy interest against the public interest. Instead, plaintiffs center their argument on segregability. Pls.' Cross-Mot. at 12. Plaintiffs point to instances where Exemption 6 and 7(C) are the sole justification for withholding entire pages. *Id.* at 15. They argue that because Exemption 6 and 7(C) generally shield such information as individual names and identifying data, it is unlikely that the withheld information consisted solely of identifying information and that no other material could have been segregated. *Id.* For example, plaintiffs point to a mostly redacted four-page document produced by defendant that appears to be a letter addressed to Senator Tom Udall, *id.*; Ex. 2 to Farrell Decl., as well as the *Vaughn* index which shows that three pages were withheld solely based on Exemption 6 and 7(C). Pls.' Cross-Mot. at 15.

The Second Hardy Declaration explains that the information in the letter to Senator Tom Udall was redacted "because it is very singular in nature, solely related to a third party, and if released in part, could still be used to identify the third party individual." Second Hardy Decl. ¶ 9. As to the pages withheld in full solely on the basis of Exemption 6 and 7(C), the agency explained that those pages "consist completely of pictures and personally identifiable information regarding

third party individuals and no additional information can be released, without risking invasion of these individuals' personal privacy." *Id.* So, after examining the FBI's *Vaughn* index and the Hardy declarations, including the two *ex parte, in camera* declarations, the Court is satisfied that all reasonably segregable material has been released under Exemption 6 and 7(C). *Juarez*, 518 F.3d at 61.

## 2. FOIA Exemption 7(E)

FOIA Exemption 7(E) protects from disclosure law enforcement records "to the extent that the production of such . . . information . . . would disclose techniques and procedures for law enforcement investigations of prosecutions, or would disclose guidelines for law enforcement investigations of prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). "Exemption 7(E) sets a relatively low bar for the agency to justify withholding: Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell,* 646 F.3d 37, 42 (D.C. Cir. 2011) (alteration in original) (internal quotation marks omitted).

The FBI's declarant avers that the information withheld was compiled for law enforcement purposes, and that the records contain information on investigative techniques and procedures, including: the informant program; sensitive file numbers; identity and/or location of FBI or joint units, squads, and divisions; database identifiers/printouts; targets of pen registers/trap & trace devices; monetary payments for investigative techniques; and information related to polygraphs. First Hardy Decl. ¶¶ 42, 88–104. The Court finds that the declarations logically demonstrate how disclosure of this information can risk circumvention of the law. *Blackwell v. FBI,* 646 F.3d at 42.

For example, the FBI's declarant asserts that "releasing [FBI strategies for contacting informants] would allow criminals opportunities to uncover or intercept the FBI's communication with its sources, expose [informants]' confidential relationships with the bureau, and deprive the FBI of critical [informant] derived intelligence." First Hardy Decl. ¶ 89 B. In another part of the declaration, the agency asserts that "releasing [FBI informant funding techniques] would allow criminals to detect the FBI's covert efforts by tracing FBI funds to the agency to its covert operations and operatives . . . [which] would allow criminals to determine whether or not they are under investigation," thus enabling them to "preemptively abort their criminal plot or take further measures to avoid detection . . . ." *Id.* D. In sum, the public declarations detail the importance of the informant program to the FBI's mission of combating and solving crime and explain that the program's success is dependent on the agency's ability to keep its techniques and procedures secret under Exemption 7(E). First Hardy Decl. ¶¶ 88–104.

Plaintiffs raise two challenges to the FBI's use of Exemption 7(E) on segregability grounds. First, they argue that the OIG failed to properly segregate information in a report concerning William Dutton and a DOJ OIG investigation into the alleged misconduct by DOJ employees ("IDMS report"). Pls.' Cross-Mot. at 14. They contend that that the "DOJ OIG provides no evidence, other than conclusory statements, that the information 'concerns investigative techniques and procedures used by the DOJ OIG in conducting the investigation.'" *Id.*

But the OIG's declarant offers a detailed factual basis for the exemption. She asserts that "the document discusses specific use of an investigative step involving a request to another entity for confidential information relevant to the investigation," and that "[t]he use of this investigative step is not publicly known, and disclosure of the withheld information concerning the details of

this investigative step could hinder law enforcement investigations." First Waller Decl. ¶ 20. The Court finds that this is sufficient to support the application of Exemption 7(E) to the IDMS report.

Next, plaintiffs argue that the FBI unlawfully withheld five pages in full under Exemption 7(E) solely on the basis that the documents contained "database identifiers/printouts." Pls.' Cross-Mot. at 15–16. They contend that "[d]efendant does not provide any evidence that the printout or database identifier cannot be redacted so that information that does not fall under one of the exemptions could be segregated and produced to Plaintiffs." *Id*. The agency avers that it "reviewed these documents again and determined that they are, in fact, printouts from protected FBI databases" and that "revealing the database identity, or specific information relating to the database, could reasonably be expected to cause harm to the investigation by revealing the type of data that is useful to the FBI's law enforcement mission, and could potentially risk circumvention from the law." Second Hardy Decl. ¶ 10. Based on the Court's review of defendant's declarations, including its *in camera, ex parte* declarations, it finds that the defendant reasonably segregated and released all of the information it could without revealing exempt information.

### 3. The Remaining FOIA Exemptions

In plaintiffs' response to defendant's statement of material facts, they assert that "plaintiffs do not challenge the information withheld under Exemption 1." Pls.' Response to Def.'s SOF [Dkt. # 20] ("Pls.' SOF") ¶¶ 94–122. And plaintiffs do not advance any arguments concerning the legitimacy of defendant's withholdings under Exemptions 3, 5, 7(A), and 7(D). The Court finds with respect to these exemptions, that plaintiffs have failed to raise a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). Plaintiffs' briefing does not specifically address these exemptions, and their statement of material facts asserts that these exemptions are "[d]isputed" but provides no factual support for that claim. *See* Local Civil Rule 7(h)(1) ("An opposition to such a

motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement."). Instead, plaintiffs merely proffer in response to many of defendant's statements that they object to "defendant's statement[s] to the extent that they call for legal conclusions or opinions" and/or that they are "unable to state whether they dispute or do not dispute the facts asserted because defendant's factual assertions concern . . . [defendant's] internal operations."[5] Pls.' SOF ¶¶ 129–30 (addressing Exemption 3); *id.* ¶¶ 134–39 (addressing Exemption 5); *id.* ¶¶ 149 (addressing Exemption 7(A); *id.* ¶¶ 159 (addressing Exemption 7(D)). This is insufficient to rise to a genuine dispute of a material fact, and in any event, defendant's arguments are not based on legal conclusions.

Upon review of the full record, including the four Hardy declarations, the two Heaton declarations, and the two Waller declarations, as well as the *Vaughn* index, the Court finds that defendant has carried its legal burden by providing a "relatively detailed justification" for its withholdings, *Morley,* 508 F.3d at 1122, under each exemption and there is no contradictory

---

5       Plaintiffs cite to *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 146 (D.C. Cir. 2006) but this case does not excuse them of their burden to challenge the facts presented by defendant.

evidence in the record or evidence of bad faith.[6] *ACLU*, 628 F.3d at 619.  Moreover, based on the

full review of the record, the Court also finds that defendant has met its segregability requirement.

## 4.     Non-disclosure under the Privacy Act

The Privacy Act provides that "[e]ach agency that maintains a system of records shall . . .

upon request by any individual to gain access to his record or to any information pertaining to him

which is contained in the system, permit him . . . to review the record and have a copy made of all

---

6       The Court recognizes that in *Winston & Strawn, LLP v. McLean*, the Court of Appeals held that "[u]nder the Federal Rules of Civil Procedure, a motion for summary judgment cannot be 'conceded' for want of opposition." 843 F.3d 503, 505 (D.C. Cir. 2016).  The court underscored that the "District Court 'must always determine for itself whether the record and any undisputed material facts justify granting summary judgment.'" *Id.*, quoting *Grimes v. Dist. of Columbia*, 794 F.3d 83, 95 (D.C. Cir. 2015).  However, that ruling arose in the context of a case in which the district court exercised its discretion under the Local Rules to treat a summary judgment motion as conceded when the non-moving party failed to file any opposition at all.  The Court stated:

> A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  And then a district court must always determine for itself whether the record and any undisputed material facts justify granting summary judgment.  These standards cannot be satisfied if, as allowed by Local Rule 7(b), the District Court simply grants judgment "as conceded" when the nonmoving party fails to meet a deadline.

*Id.* at 507 (internal citations, quotation marks, and edits omitted).

But that is not what happened in this case.  Defendant met its initial responsibility to inform the Court of the basis of its motion, and it pointed to the portions of the record that demonstrate the lack of any genuine issue of material fact.  And here, unlike in *Winston & Strawn*, plaintiffs filed a timely opposition to the motion for summary judgment.  Thus, plaintiffs have availed themselves of the opportunity provided in Rule 56(c) to address all of defendant's assertions of fact, and, pursuant to Rule 56(e), the Court may consider facts "undisputed for purposes of the motion" when "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . ." Fed. R. Civ. P. 56.  Since plaintiffs have not presented facts that would give rise to a genuine dispute of material fact concerning the invocation of Exemptions 1, 3, 5, 7(A), and 7(D), there is no dispute for the Court to adjudicate, and the requirements of Rule 56 have been satisfied.  *See e.g., Shapiro v. Dep't of Justice,* 239 F. Supp. 3d 100, 105–06 (D.D.C. 2017) (finding that where an exemption under FOIA is not challenged, there is no dispute for the Court to resolve).

or any portion thereof in a form comprehensible to him . . . ." 5 U.S.C. § 552a(d)(1). Exemption (j)(2) protects from mandatory disclosure systems of records "maintained by an agency or component thereof which performs as its principal function any activity to the enforcement of criminal law, including police efforts to prevent, control, or reduce crime or to apprehend criminals." 5 U.S.C. § 522a(j)(2). Under the Act, agencies may promulgate rules to exempt systems from provisions of the Act. *See* 5 U.S.C. § 552a(d), (j), (k). The DOJ promulgated regulation 28 C.F.R. § 16.96(a)(1) which exempts FBI law enforcement records maintained in the Central Records System from the Privacy Act. First Hardy Decl. ¶¶ 37–38. Because the responsive records to plaintiff's request were generated in the furtherance of the FBI's law enforcement duties and are maintained in the Central Records System, defendant contends that the records are exempt under (j)(2) of the Privacy Act. *Id.* ¶ 38. However, defendant avers that "none of the information exempt from disclosure under the Privacy Act has been withheld from plaintiffs unless it was withheld under a FOIA exemption." *Id.* Plaintiffs have not challenged defendant's application of Exemption (j)(2) under the Privacy Act. Since there is no evidence in the record to rebut the defendant's affidavit, and the Court has already determined that the FOIA Exemptions were properly invoked and the segregability requirement was met, this issue has been addressed under the FOIA discussion.

**CONCLUSION**

For the reasons stated above, the Court will grant defendant's motion for summary judgment, and will deny plaintiffs' cross-motion. A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: March 19, 2018